THERESA ROSSENBACH, Respondent, *v.* THE SUPREME COURT OF THE INDEPENDENT ORDER OF FORESTERS, Appellant.

EVIDENCE — ERRONEOUS EXCLUSION ON CROSS-EXAMINATION OF QUESTIONS AFFECTING CREDIBILITY OF WITNESSES. Where in an action to enforce a fraternal insurance certificate. the principal issues litigated were, first, as to whether answers to questions in the application relating to the assured's use of intoxicating liquors were made by him or were written in without his knowledge or consent by the medical examiner; second, if made by the assured, whether they were true, and there is evidence that he was an habitual user of intoxicating liquors; that he had been convicted of public intoxication and had been confined in the penitentiary therefor; the refusal of the trial court to permit the plaintiff, who had sworn that the answers were made without the knowledge or consent of the assured and that she had never seen him intoxicated, to testify on cross-examination as to whether she had seen him in the penitentiary, constitutes reversible error; the exclusion, also, on cross-examination, of a question to plaintiff's son who had testified that he had known the assured all his life and had never seen him intoxicated, as to whether he had not talked with her about having a complaint made against the assured for intoxication, constitutes reversible error; both questions materially affected the credibility of the witnesses and should not have been excluded.

*Rossenbach* v. *Order of Foresters*, 98 App. Div. 634, reversed,

(Argued January 26, 1906; decided February 13, 1906.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 25, 1904, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, as far as material, are stated in the opinion.

*O. P. Stockwell* for appellant. Various exceptions to rulings on the admission and exclusion of evidence are well taken. (*Cary* v. *White*, 59 N. Y. 336; *Mead* v. *Shea*, 92 N. Y. 127; *Cruikshank* v. *Gordon,* 118 N. Y. 178; *Valton* v. *Nat. F. L. Ins. Co.*, 20 N. Y. 32; *People ex rel. Sears* v. *Tobey*, 153 N. Y. 399; *Hobart* v. *Hobart*, 62 N. Y. 80; *Foote* v. *Beecher*, 78 N. Y. 155; *Carroll* v. *Deimel*, 95 N. Y. 252,

256; *Holcomb* v. *Holcomb,* 95 N. Y. 316; *People* v. *Strait,*
154 N. Y. 165; *Cassady* v. *Uhlmann,* 170 N. Y. 522.)

*George V. Fleckenstein* for respondent.

CHASE, J.    The plaintiff is the beneficiary named in a cer-
tificate or policy of insurance issued by the defendant to her
brother, one of its members.    On the 10th day of October,
1900, the assured made application for membership in, the
defendant and for fraternal insurance of $2,000.    The appli-
cation was accepted and the assured was initiated into the
order November 22nd, 1900.    The certificate of insurance
is dated December 18th, 1900, and was delivered Decem-
ber 27th, 1900.    Prior to the execution and delivery of
the certificate. and on the 12th day of December, 1900, the
assured was committed to the State Hospital for the Insane at
Rochester, and remained there until October 27th, 1901, when
he died.    The defendant refused to pay the amount of the
certificate and the plaintiff brought this action thereon.    The
defendant by its answer alleged in substance that the assured,
as a condition of being admitted into membership of the
defendant, promised and agreed that if he should make any
false representations in his application or written statement to
the medical examiner or conceal any mental or physical infirm-
ity or fail to disclose any material fact relating to himself, he
would *ipso facto* forfeit all payments that he had made to the
defendant and all benefits that he or his beneficiaries would
otherwise be entitled to receive.    The answer further alleged
that the deceased, for the purpose of obtaining the certificate
of insurance, did unlawfully, wrongfully and falsely represent
and state to the medical examiner, among other things, that
he did not drink wine, spirits or malt liquors and that he never
had been intoxicated.    The answer further alleged that the
defendant relied upon said representations and believed them
to be true, and that it was thereby induced to accept the
deceased as a member of its order and issue to him said certifi-
cate; that in fact and in truth said statements were false and
untrue and that they were made by the deceased with a pre-

conceived purpose of cheating and defrauding the defendant in obtaining admission into its order, and said certificate of insurance. The issues joined by the pleadings were tried before the court and a jury and the jury found in favor of the plaintiff, and the judgment entered thereon has been unanimously affirmed by the Appellate Division. The only questions remaining for our consideration are those arising upon the exceptions taken upon the trial.

In the assured's statement to the medical examiner, presented with his application for membership and insurance, the answer "No" is given to the following questions: "Do you drink wine?" "Do you drink spirits?" "Do you drink malt liquors?" "Have you been intoxicated within the past five years?" To the question, "When was the last occasion?" the answer "Never" is given, and to the further question, "What has been your habit in this respect during life?" the answer "Temperate" is given. The plaintiff asserted upon the trial that the assured did not make said answers to the questions relating to the use of intoxicating drinks, but that the medical examiner of the defendant placed the answers to said questions in said statement presented with his application for membership without asking him such questions and without the knowledge or consent of the assured. Many witnesses were sworn by the defendant to show that the assured was an habitual user of intoxicants and that he was repeatedly and almost continuously intoxicated for several years prior to his death, and that on two occasions, once in December, 1897, and again in October, 1899, he was arrested and convicted for public intoxication, and that on each occasion he served his sentence therefor in the penitentiary at Rochester. The plaintiff claimed on the trial that the defendant had not shown that the person confined in the penitentiary for public intoxication, although bearing the name of the assured, was in fact the assured. The plaintiff was sworn as a witness and testified that the deceased was employed at her husband's store for about *two years* prior to being taken to the hospital, and that he had his dinner at her house every

day during that time and that she saw him on each of those occasions. She further testified that she never saw him intoxicated, and that she never saw him drink intoxicating liquors, except one glass of beer several years prior to his death. On cross-examination she was asked the question : " Did you see Marzhauser (assured) in the penitentiary in this city at any time ? " The question was objected to, without specifically stating the reasons therefor, and the objection was sustained and defendant excepted. Plaintiff's son was also sworn as a witness on behalf of the plaintiff, and he testified that he lived with the plaintiff and that he had known his uncle, the assured, all his life and that he never saw him intoxicated or drink intoxicating beverages. He was asked, on cross-examination : " Did you talk with your mother about having a complaint made against him for intoxication at that time ? " — the time referred to was the year or two during which the assured had his dinners at the plaintiff's house. The plaintiff objected to this question upon the ground that it was immaterial, incompetent and irrelevant, and the objection was sustained and the defendant excepted.

The principal questions litigated on the trial and left to the jury for their determination were, *first*, whether the assured gave the answers appearing in said statement relating to his use of intoxicating liquors, as claimed by the defendant, or whether they were written therein by the defendant's medical examiner without the knowledge or consent of the assured, and, *second*, if the answers were in fact given by the assured as shown in his said statement, whether they were true. The question to the plaintiff was material upon the identity of the person confined in the penitentiary for public intoxication and as affecting the good faith and credibility of the plaintiff as a witness. If the plaintiff's son discussed with her the question as to the advisability of having the assured arrested for intoxication, it would materially affect the weight to be given to his testimony in contradiction of the testimony of the defendant relating to the assured's continued and excessive use of intoxicants. As these questions were clearly intended to elicit tes-

timony materially affecting one of the questions seriously litigated on·the trial, the refusal to allow the questions to be answered cannot now be said to have been immaterial.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

CULLEN, Ch. J., GRAY, O'BRIEN, EDWARD T. BARTLETT and WERNER, JJ., concur; HISCOCK, J., not sitting.

Judgment reversed, etc.